## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LORE GREENFIELD and ALAN R. HIGGS, Individually and on Behalf of All Others Similarly Situated, | : : : | CIVIL ACTION NO. 10-01683 |
| | : | SECTION "N" |
| Plaintiff, | : : | JUDGE KURT D. ENGLEHARDT |
| v. | : : | MAG. (5) |
| BP PLC; BP AMERICA, INC.; BP EXPLORATION & PRODUCTION, INC.; ANTHONY B. HAYWARD; BRYON E. GROTE; ANDY G. INGLIS; CARL-HENRIE SVANBERG; PAUL M. ANDERSON; ANTHONY BURGMANS; CYNTHIA B. CARROLL; WILLIAM CASTELL; H. LAMAR MCCAY; ERROLL B. DAVIS; and TOM MCKILLP, | : : : : : : : : : : : | MAGISTRATE ALMA L. CHASEZ  JURY DEMAND |
| Defendants. | : | |
| EUGENE MCCLURG, Individually and on Behalf of All Others Similarly Situated, | : : : | CIVIL ACTION NO. 10-01881 |
| Plaintiff, | : : | |
| v. | : : : | |
| BP, PLC; BP AMERICA, INC.; ANTHONY B. HAYWARD; LORD EDMUND JOHN PHILIP BROWNE; ANDREW G. INGLIS; CARL-HENRIC SVANBERG; H. LAMAR MCKAY; SIR WILLIAM M. CASTELL; PAUL M. ANDERSON; ANTHONY BURGMANS; CYNTHIA CARROLL; ERROLL B. DAVIS, JR.; and PETER SUTHERLAND, | : : : : : : : : : : : | |
| Defendants. | : | |

[Captions continued on next page]

## MEMORANDUM IN SUPPORT OF THE MOTION OF THE CALIFORNIA PUBLIC FUNDS FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL

| | | |
|---|---|---|
| THE OKLAHOMA POLICE PENSION & RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | : | CIVIL ACTION NO. 10-2013 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BP, PLC; BP AMERICA, INC.; ANTHONY B. HAYWARD; LORD EDMUND JOHN PHILIP BROWNE; ANDREW G. INGLIS; CARL-HENRIC SVANBERG; H. LAMAR MCKAY; SIR WILLIAM M. CASTELL; PAUL M. ANDERSON; ANTHONY BURGMANS; CYNTHIA CARROLL; ERROLL B. DAVIS, JR.; and PETER SUTHERLAND, | : | |
| | : | |
| Defendants. | : | |

## <u>TABLE OF CONTENTS</u>

**Page**

I.  Preliminary Statement ................................................................................................... 1

II.  Factual Background .................................................................................................... 2

III.  Argument .................................................................................................................... 6

    A.  The California Public Funds Should Be Appointed Lead Plaintiff ...................... 6

    B.  The California Public Funds Are the "Most Adequate Plaintiff" .......................... 6

        1.  The California Public Funds Have the Largest Financial Interest
            in the Relief Sought by the Class .................................................................. 7

        2.  The California Public Funds Satisfy Rule 23 ............................................... 9

            a.  The California Public Funds Are Typical ......................................... 9

            b.  The California Public Funds Are Adequate ................................... 10

        3.  The California Public Funds Are the Prototypical Plaintiff
            Envisioned by the PSLRA ......................................................................... 10

    C.  The Court Should Approve the California Public Funds' Selection of
        Counsel ............................................................................................................ 11

    D.  The Related Actions Should Be Consolidated .................................................. 13

IV.  Conclusion ............................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Gluck v. CellStar Corp.,*
    976 F. Supp. 542 (N.D. Tex. 1997) ...................................................................11

*In re Olsten Corp. Sec. Litig.,*
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..................................................................**7**

*In re Orthodontic Centers of Am., Inc., Sec. Litig.,*
    No. 01-949, 2001 U.S. Dist. LEXIS 21816 (E.D. La. Dec. 17, 2001)............................8, 9, 10

*In re Universal Access, Inc. Sec. Litig.,*
    209 F.R.D. 379 (E.D. Tex. 2002)......................................................................13

*Lax v. First Merchants Acceptance Corp.,*
    No. 97-2715, 1007 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .....................................7

*Olsen v. New York Cmty. Bancorp, Inc.,*
    233 F.R.D. 101 (E.D.N.Y. 2005) ......................................................................13

*Tarica v. McDermott Int'l, Inc.,*
    No. 99-3831, 2000 U.S. Dist. LEXIS 5031 (E.D. La. Apr. 13, 2000)............................ *passim*

*Thompson v. Shaw Group Inc.,*
    No. 04-1685, 2004 U.S. Dist. LEXIS 25641 (E.D. La. Dec. 13, 2004)............................8, 12

*Weltz v. Lee,*
    199 F.R.D. 129 (S.D.N.Y. 2001) ......................................................................13

STATUTES AND RULES

15 U.S.C. § 78u-4 ............................................................................................. *passim*

Fed R. Civ. P. 23.................................................................................................9, 10

Fed R. Civ. P. 42(a) ..........................................................................................13, 14

OTHER AUTHORITIES

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* U.S.C.C.A.N. 679 .........................................11

The Sacramento County Employees' Retirement System ("SCERS"), the Fresno County Employees' Retirement Association ("FCERA") and Alameda County Employees' Retirement Association ("ACERA") (collectively, the "California Public Funds") respectfully submit this memorandum of law in support of their Motion for: (i) appointment of the California Public Funds as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (ii) approval of the California Public Funds' selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Barroway Topaz Kessler Meltzer & Check, LLP ("Barroway Topaz") as Lead Counsel; and (iii) consolidation of the Related Actions (defined *infra* at n.1).

## I.      PRELIMINARY STATEMENT

Presently pending in this District are three related securities class actions brought on behalf of investors who purchased American Depositary Shares ("ADS") and common shares issued by defendant BP plc ("BP" or the "Company").[1]  The Related Actions assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against BP and certain of its officers for materially misrepresenting BP's commitment to safety and operational integrity – including BP's failure to maintain an adequate oil spill response plan for its deep-sea drilling operations in the Gulf of Mexico ("Gulf").

Pursuant to the PSLRA, the Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which

---

[1] *See Greenfield v. BP plc,* No. 10-cv-01683 (E.D. La); *McClurg v. BP plc,* No. 10-01881 (E.D. La.); and *Oklahoma Police Pension & Ret. Sys. v. BP plc,* No. 10-2013 (E.D. La.) (collectively, the "Related Actions"). The longest and most comprehensive class period in any of the actions filed to date is June 30, 2005 to June 1, 2010. *See McClurg,* No. 2:10-cv-01881.  For purposes of this motion, the California Public Funds' financial interest is calculated based on the class period pleaded in the *McClurg* action.  Substantially similar actions against BP and its officers are also pending in the Western District of Louisiana and the Central District of California. *See Ludlow v. BP plc,* No. 10-cv-00818-RTH-CMH (W.D. La.); *Johnson Inv. Counsel, Inc. v. BP plc,* No. 10-0093-RTH-PJH (W.D. La); *Yuen v. BP plc,* No. 10-cv-4164 (C.D. Cal.).  Certain of these actions are the subject of a motion before the Judicial Panel on Multidistrict Litigation.

movant or movants has the "largest financial interest" in the relief sought by the Class and that also can make a *prima facie* showing of adequacy and typicality under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The California Public Funds respectfully submit that they are the "most adequate plaintiff" to represent the Class.

Among other things, the California Public Funds suffered losses of approximately $13.8 million on a first-in, first-out ("FIFO") basis and $10.9 million on a last-in, first-out ("LIFO") basis from their Class Period transactions in the BP securities that are the subject of this action.[2]  Further, the California Public Funds satisfy the necessary requirements of Rule 23, as their claims are typical of the other members of the Class and because the California Public Funds will adequately represent the Class.  Indeed, the California Public Funds are large, sophisticated public pension funds that collectively manage billions of dollars in assets.  In addition, the California Public Funds have selected and retained Bernstein Litowitz and Barroway Topaz, law firms with substantial experience in prosecuting securities fraud class actions, to serve as Lead Counsel for the Class.

Accordingly, the California Public Funds respectfully request that they be appointed as Lead Plaintiff and that the Court otherwise grant the relief requested in their motion.

## II.    FACTUAL BACKGROUND

BP is one of the world's largest energy companies.  Among other things, the Company engages in deepwater drilling for hydrocarbons around the globe including in the Gulf of Mexico.

As detailed in the Related Actions, since at least June 2005, the Company touted the Gulf of Mexico as one of its "largest area[s] of growth in the US," yet it failed to disclose to investors that

---

[2] The PSLRA-required certifications setting for the California Public Funds' transactions in BP securities are attached as Exs. A-C to the Declaration of Mitchell J. Hoffman in Support of the Motion of the California Public Funds for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Hoffman Decl.").  Losses calculated on both a FIFO and LIFO basis for each of the California Public Funds are included in the charts attached as Ex. E.

BP's Gulf operations were being conducted without a legitimate plan in place to respond to a potential oil spill from its deepwater drilling activities in the region.  Exacerbating the probability that BP's inadequate spill response would actually be relied upon to respond to a sizable spill, BP has for years maintained a corporate culture where adherence to safety protocols and environmental laws were ignored in favor of profits.  Indeed, BP's culture of placing profits over safety and other laws led to a 2005 explosion in Texas City, Texas which caused the deaths of 15 people.  Shortly after the Texas City disaster, BP's inaction in responding to defects in a pipe led to two oil spills in Alaska in 2006.  Following the Texas City and Alaska disasters, BP pled guilty to criminal violations and subsequently assured investors that safety would be a guiding principle of the Company's operations.  The Company's public statements routinely detailed the specific steps taken by BP to reform its culture while reducing the possibility that lapses leading to the disaster in Texas City and Alaska would be repeated in the future.

On the night of April 20, 2010, the risks concealed by BP's inadequate spill response plan and the Company's false assurances about its organizational changes to improve its culture began to materialize when an eruption of oil or natural gas occurred leading to an intense fire on the Deepwater Horizon oil rig, which was drilling an exploratory well about 50 miles off of the Louisiana coast.  Eleven lives were lost in the disaster.

The fire on the Deepwater Horizon consumed the rig and eventually caused it to sink.  As the rig sank, it pulled a pipe connecting the rig to the well (the "riser") with it.  The riser subsequently tore away from the well, and oil began leaking into the Gulf.  Crewmembers' efforts to trigger the blow out preventer ("BOP"), a device used to seal an oil well in an emergency, failed, causing oil to spill into the Gulf.

Rather than respond to the disaster with a definitive plan to contain the spill, BP began a trial

and error approach to containing the oil by employing various tactics which were seemingly developed as the spill was raging.  BP's response to the spill evidences that the Company had no legitimate spill response plan in place for any of its deep-sea operations.  Indeed, the spill response plan BP had in place for the Deepwater Horizon, which was drilling an exploratory well at the Macondo prospect site, grossly misrepresented BP's capabilities to respond to a spill by declaring that "[BP] has the capability to respond to the maximum extent practicable to a worst-case discharge."  Other statements contained in the Macondo well spill response plan highlight the reckless approach BP took in developing a response plan for the well.  According to the Company, an oil spill from the well would result in "[n]o adverse activities to fisheries" or "[n]o adverse impacts to endangered or threatened marine mammals."

Contrary to BP's assurances, the current spill has closed 36% of the fisheries in the Gulf and threatens hundreds of marine animals.  With respect to the impact on the shoreline of the United States, the Macondo well spill response plan declares that: "due to the distance to shore (48 miles) and the response capabilities that would be implemented, no significant adverse impacts are expected."   Contrary to BP's assurances, hundreds of miles of coastline have been impacted by BP's oil spill.

The Company's separate spill response plan for the Gulf region – a region touted by the Company as its "largest area of growth in the US" – is equally useless as it, among other things, discusses the impact to walruses from an oil spill in the Gulf.  Walruses have not lived in the Gulf in over 3 million years.  That regional plan also estimates a worst case leak of 250,000 barrels per day.  BP has shown it is incapable of responding to such a spill significantly smaller than its own "worst case" estimates.   By late June, oil had contaminated the coastlines of Louisiana, Alabama, Mississippi and Florida.  Hundreds of miles of the United States Gulf coast, the livelihoods of people

depending on the Gulf and thousands of animals are all impacted by the oil spill.  The Gulf spill has eclipsed the Exxon Valdez oil spill in Prince William Sound, Alaska, on March 24, 1989, to become the worst environmental disaster in the history of the United States.

The cost to BP's investors from the defendants' deceptive statements will run into the billions of dollars.  On June 16, 2010, after a meeting with President Obama, BP agreed to set aside $20 billion in an escrow account to compensate victims of the BP oil spill.  The $20 billion figure is reportedly a down payment of costs to be borne by BP and not a cap on BP's liability.

The day after the creation of the $20 billion fund was announced, defendant Anthony "Tony" Hayward ("Hayward"), BP's CEO, appeared before a Congressional committee investigating the explosion on the Deepwater Horizon.  Rather than assist the committee's investigation, Hayward provided evasive responses and was accused of "stonewalling" the investigation.  Congressman Waxman bluntly asked Hayward:  "Are you failing to cooperate with other investigators, as well . . . Because they're going to have a hard time reaching conclusions if you stonewall them, which is what we seem to be getting today."  Congressman Waxman, who has been reviewing BP documents, also stated that "BP's corporate complacency is astonishing. . .  BP cut corner after corner to save a million dollars here and a few hours or days there.  And now the whole Gulf Coast is paying the price."  Hayward was recalled to Europe days after giving testimony.

The Class has suffered massive losses from the materialization of the risks concealed by BP's misleading statements and material omissions.  At the time of the explosion aboard the Deepwater Horizon, BP's ADSs traded for approximately $60.00 per ADS.  Since that time however, the Company's ADSs (and common shares) have fallen over 50%, eliminating approximately $100 billion in the Company's total market capitalization.

The first of the Related Actions was filed on May 21, 2010 by shareholder Robert Ludlow. *Ludlow v. BP plc,* No. 10-cv-00818-RTH-CMH (W.D. La).  On May 21, 2010, Mr. Ludlow

published notice of the pendency of his action on *Business Wire*, which provided a July 20, 2010 deadline to seek appointment as Lead Plaintiff.  *See* Hoffman Decl., Ex. D.  The California Public Funds now timely move this Court to be appointed as the Lead Plaintiff for the Related Actions.  *See Tarica v. McDermott Int'l, Inc.*, No. 99-3831, 2000 U.S. Dist. LEXIS 5031, at *10 (E.D. La. Apr. 13, 2000).

## III.   ARGUMENT

### A.   <u>The California Public Funds Should Be Appointed Lead Plaintiff</u>

The California Public Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA sets forth the procedure for selecting the lead plaintiff in class actions arising under the federal securities laws and provides a presumption favoring the plaintiff or plaintiffs with the largest financial interest in the action.  Under the PSLRA, the Court "shall" adopt a presumption that the most adequate plaintiff is "the person or group of persons that…(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### B.   The California Public Funds Are the "Most Adequate Plaintiff"

#### 1.   The California Public Funds Have the Largest Financial Interest in the Relief Sought by the Class

The California Public Funds respectfully submit that they have the largest financial interest of any qualified movant in this action and should therefore be appointed Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  In analyzing financial interest, courts typically consider four factors: (i) the number of gross shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended to acquire those shares; and (iv) the movant's approximate losses.  *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y.

1998); *Lax v. First Merchants Acceptance Corp.*, No. 97-2715, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997).  Based on these four factors, the California Public Funds believe that they have the largest financial interest in the relief sought by the class.  *See Tarica*, 2000 U.S. Dist. LEXIS 5031, at *12-13.

During the Class Period, the California Public Funds purchased 436,514 BP ADSs[3] and 3,793,894 shares of BP common stock, and had net purchases of 215,220 BP ADSs and 1,666,421 shares of BP common stock.  The California Public Funds had net expenditures of $11,542,403.77 on their purchases of BP ADSs, and $15,472,126.85 on their purchases of BP common stock.  As a result of BP's misconduct and the subsequent market correction of the prices of BP securities (including BP ADSs and common stock), the California Public Funds suffered losses of approximately $5.1 million on BP ADSs and $8.7 million on BP common stock for a total loss of $13.8 million (on a FIFO basis).  On a LIFO basis, the California Public Funds suffered losses of approximately $4.5 million on BP ADSs and $6.4 million on BP common shares for a total loss of $10.9 million.[4]  *See* Hoffman Decl., Ex. E.  The magnitude of the California Public Funds' collective financial interest is illustrated in the following charts:

**American Depositary Shares**

| Factor | California Public Funds' Position |
|---|---|
| Purchases | 436,514 |
| Net Purchases | 215,220 |
| Net Expenditures | $11,542,403.77 |
| FIFO Loss | ($5,134,569.95) |
| LIFO Loss | ($4,474,533.98) |

---

[3] One ADS represents six shares of common stock.

[4] FIFO and LIFO are the two methodologies that courts use to calculate losses.  *See Thompson v. Shaw Group Inc.*, No. 04-1685, 2004 U.S. Dist. LEXIS 25641, at *14 (E.D. La. Dec. 13, 2004) ("Under FIFO . . . shares sold during the class period are matched with the first shares held or purchased at the beginning of the class period, whichever comes first.  Under the LIFO approach, a plaintiff's sales of the defendant's stock during the class period are matched against the last shares purchased, resulting in an off-set of class-period gains from a plaintiff's ultimate losses.").

**Total (ADS and Common Stock)**

| Factor | California Public Funds' Position |
|---|---|
| Purchases | 6,412,978 |
| Net Purchases | 2,957,741 |
| Net Expenditures | $27,014,530.62 |
| FIFO Loss | ($13,798,611.82) |
| LIFO Loss | ($10,934,610.47) |

In light of their extremely large financial interest, the California Public Funds are entitled to the statutory presumption as the most adequate plaintiff and should be appointed Lead Plaintiff in this case.

The appointment of a group of class members as Lead Plaintiff is appropriate under the PSLRA, as courts in this District have recognized.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Orthodontic Ctrs. of Am., Inc. Sec. Litig.*, No. 01-949, 2001 U.S. Dist. LEXIS 21816, at *17 (E.D. La. Dec. 17, 2001) (granting small, manageable group's motion for appointment as lead plaintiff). The California Public Funds are comprised of a small, cohesive group of three sophisticated institutional investors with experience supervising counsel in the prosecution of complex litigation, and therefore, the group members' financial interests are properly aggregated for purposes of this motion.

**2.      The California Public Funds Satisfy Rule 23**

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the

class." Although Rule 23 consists of four requirements, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See Tarica,* 2000 U.S. Dist. LEXIS 5031, at *13; *In re Orthodontic Centers of Am.*, 2001 U.S. Dist. LEXIS 21816, at *11.

### a.    The California Public Funds Are Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. The test of typicality is whether the "plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all class members." *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *17 (citing *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999)).

Here, the California Public Funds are typical because, just like all other class members asserting claims under the Exchange Act, they: (1) purchased or otherwise acquired BP securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the defendants' misconduct, causing the price of BP's securities to fall. *See Tarica,* 2000 U.S. Dist. LEXIS 5031, at *14. Thus, the California Public Funds' claims are typical of other class members' claims because they arise out of the same course of events and are predicated on identical theories of liability and damages. *See id.*

### b.    The California Public Funds Are Adequate

The adequacy requirement of Rule 23(a)(4) is met if the representative party makes a showing that it will "fairly and adequately protect the interests of the class." In evaluating adequacy, courts consider whether the: (1) "class representatives . . . [do] not have interests antagonistic to the class members;" and (2) lead plaintiff's selection of counsel is "qualified, experienced, and able to prosecute the action vigorously." *Tarica*, 2000 U.S. Dist. LEXIS 5031, at *14; *see also Orthodontic*

*Centers of Am.*, 2001 U.S. Dist. LEXIS 21816, at *12-13.

Here, the California Public Funds are adequate to represent the class. The California Public Funds' interests are aligned with the interests of the Class as both suffered losses from the revelation of defendants' false and misleading statements and material omissions. Additionally, there is no antagonism between the California Public Funds and the Class. Moreover, each member of the California Public Funds has certified its willingness to serve as a representative of the Class and expressed its commitment to vigorously prosecute this litigation in order to maximize the recovery in this action. *See* Hoffman Decl., Exs. A-C. Finally, as shown below, the California Public Funds' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, the California Public Funds satisfy the typicality and adequacy requirements of Rule 23, and should be appointed as Lead Plaintiff.

### 3. The California Public Funds Are the Prototypical Plaintiff Envisioned by the PSLRA

The appointment of the California Public Funds fulfills a critical legislative goal behind enacting the PSLRA – encouraging sophisticated institutions with large financial interests to serve as lead plaintiff in securities class actions. *See Gluck v. CellStar Corp.,* 976 F. Supp. 542, 548 (N.D. Tex. 1997) (noting that "Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *see also* H.R. Conf. Rep. No. 104-369 (1995) *reprinted in* 1995 U.S.C.C.A.N. 679 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of sophisticated institutional investors like the California Public Funds, which typically have a large financial stake in the outcome of the litigation, would be beneficial because such investors are more apt to effectively manage complex securities litigation.

The members of the California Public Funds are all large California State public employee retirement systems that are enacted and administered in accordance with the provisions of the County Employees Retirement Law of 1937 (California Government Code Section 31450, et seq.). Each member of the group provides retirement benefits for eligible employees, among other things, and has billions of dollars in net assets under its management.  Members of the group also have significant experience managing complex securities class action litigation.  For example, ACERA served as lead plaintiff in *In re Lehman Brothers Securities and ERISA Litigation*, No. 09-md-2017 (S.D.N.Y.) and in *In re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-1376 (N.D. Cal.).  In light of the foregoing, the California Public Funds have the requisite experience and expertise to vigorously represent the Class in this action.  Accordingly, as demonstrated above, the California Public Funds are the prototypical lead plaintiff envisioned by Congress pursuant to the PSLRA.

### C.     The Court Should Approve the California Public Funds' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Tarica,* 2000 U.S. Dist. LEXIS 5031, at *16.  The Court should not disturb lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *23.  Because the California Public Funds have selected and retained counsel experienced in litigating securities fraud class actions with the resources to prosecute this action to achieve the greatest recovery possible for the Class, their choice of lead counsel should be approved.

The California Public Funds have selected Bernstein Litowitz and Barroway Topaz to serve as Lead Counsel for the Class.  Bernstein Litowitz and Barroway Topaz are among the preeminent

class action firms in the country, having been appointed lead or co-lead counsel in numerous complex securities class actions around the country. *See* Hoffman Decl., Exs. F, G.

Bernstein Litowitz, which maintains an office in New Orleans, served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.), in which settlements totaling in excess of $6 billion – one of the largest recoveries in securities class action history – were obtained for the class. Courts have recognized Bernstein Litowitz as adequate and qualified class counsel in multiple other securities class actions, including actions involving Bank of America, Washington Mutual Inc., and Merck & Co. *See* Hoffman Decl., Ex. F.

Likewise, Barroway Topaz specializes in prosecuting complex class action litigation and is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. For example, Barroway Topaz served as co-lead counsel in the *In re Tyco International Ltd. Securities Litigation*, No. 02-266-PB (D.N.H.), procuring a settlement valued at $3 billion – one of the largest securities class actions settlements in United States history. In addition, Barroway Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions, including actions involving Lehman Brothers, Bank of America, Medtronic, and UBS. *See* Hoffman Decl., Ex. G.

Accordingly, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from these firms. Each firm put forward by the California Public Funds is highly qualified and will zealously represent the class's interests.

### D.  The Related Actions Should Be Consolidated

Rule 42(a) permits the consolidation of actions that involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). The PSLRA requires the resolution of any motions to consolidate actions

before selecting a lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii); *Tarica*, 2000 U.S. Dist. LEXIS 5031, at *11 ("the court shall not make the determination . . . [regarding the appointment of lead plaintiff] until after the decision on the motion to consolidate is rendered") (brackets in original); *In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 382 (E.D. Tex. 2002).

"In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced."  *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (internal citation omitted).  Differences in class periods do not prevent consolidation of otherwise related actions.  *See Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 105 (E.D.N.Y. 2005).  The Related Actions are as follows:

| Case | Civil No. | Court | Date Filed |
|---|---|---|---|
| *Greenfield v. BP plc* | 10-cv-01683 | E.D. La. | June 8, 2010 |
| *McClurg v. BP plc* | 10-cv-01881 | E.D. La. | June 30, 2010 |
| *Oklahoma Police Pension & Retirement System v. BP plc* | 10-cv-02013 | E.D. La. | July 19, 2010 |

The Related Actions present substantially identical factual and legal issues, as they each arise out of BP's misstatements and omissions regarding its commitment to safety and operational integrity and assert claims under the Exchange Act against overlapping defendants.  Plaintiffs in all actions share a mutual interest in having one court resolve common factual and legal questions concerning whether defendants made material misstatements and/or omitted material facts, whether the price of BP securities were artificially inflated as a result and whether corrective disclosures led to investor losses by removing the inflation caused by defendants' misstatements and material omissions.  Accordingly, consolidation of the Related Actions, and any related actions subsequently filed in or transferred to this District is appropriate.  *See* Fed. R. Civ. P. 42(a).

## IV.     CONCLUSION

For the foregoing reasons, the California Public Funds respectfully request that the Court: (i) appoint the California Public Funds as Lead Plaintiff; (ii) approve the California Public Funds' selection of Bernstein Litowitz and Barroway Topaz to serve as Lead Counsel, (iii) consolidate the Related Actions; and (iv) grant such further relief as the Court may deem just and proper.

Dated:  July 20, 2010

Respectfully submitted,

LOWE, STEIN, HOFFMAN,
ALLWEISS & HAUVER, L.L.P.

/s/ Mitchell J. Hoffman
Mitchell J. Hoffman (#6896)
Serena E. Pollack (#32682)
Jeffrey M. Hoffman (#29253)
701 Poydras Street, Suite 3600
New Orleans, Louisiana  70139-7735
Telephone: (504) 581-2450
Facsimile: (504) 581-2461

*Liaison Counsel*

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
G. Anthony Gelderman
2727 Prytania Street, Suite 14
New Orleans, Louisiana  70130
Telephone: (504) 899-2339
Facsimile: (504) 899-2342

-and-

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
Blair A. Nicholas
12481 High Bluff Drive, Suite 300
San Diego, CA 92310
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Sean M. Handler

Darren J. Check
Naumon A. Amjed
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Ramzi Abadou
Erik D. Peterson
580 California Street, Suite 1750
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel to the California Public Funds and
Proposed Lead Counsel for the Class*

I hereby certify that on July 20, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.  I further certify that service was accomplished to any party listed on the attached manual notice list via regular U.S. mail.

Dated:  July 20, 2010                         /s/ Mitchell J. Hoffman
                                              Mitchell J. Hoffman

# Mailing Information for a Case 2:10-cv-01683-KDE-ALC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Eric J. O'Bell**
  ejo@obelllawfirm.com,ejoatlaw@aol.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`

# Mailing Information for a Case 2:10-cv-01881-KDE-DEK

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey M. Hoffman**
  jhoffman@lshah.com,smuller@lshah.com

- **Mitchell J. Hoffman**
  Mhoffman@lshah.com,Tlewis@lshah.com

- **Serena E. Pollack**
  spollack@lshah.com,smuller@lshah.com,ngray@lshah.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

# Mailing Information for a Case 2:10-cv-02013-KDE-KWR

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Shirin E. Harrell**
  sharrell@harrell-nowak.com,mbass@harrell-nowak.com

- **Eric R. Nowak**
  enowak@harrell-nowak.com,tguthrie@harrell-nowak.com,lstern@bermanesq.com,mhandley@cohenmilstein.com,sharrell@harrell-nowak.com,jellison@hnwewin.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)